United States Court of Appeals,

Eleventh Circuit.

No. 95-8691.

William A. HOLBROOK, Plaintiff-Appellant,

v.

CITY OF ALPHARETTA, GEORGIA, et al., Defendants-Appellees.

May 22, 1997.

Appeal from the United States District Court for the Northern District of Georgia. (No. 1:92-cv-252-JEC), Julie E. Carnes, Judge.

Before KRAVITCH and BIRCH, Circuit Judges, and SCHWARZER[*], Senior District Judge.

BIRCH, Circuit Judge:

In this appeal, filed pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101-12213, we must decide the following issues of first impression in our circuit: (1) to what extent is evidence of past accommodation of a disabled employee determinative of an employer's ability to accommodate that employee in the future; (2) are claims brought pursuant to Title II of the ADA involving events that occurred prior to the effective date of Title I actionable under the ADA or the Rehabilitation Act of 1973; (3) can a plaintiff bypass the administrative procedures set forth under the ADA by filing a civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of the ADA? In addition, we must resolve whether a public employee's filing of a state *ante litem* claim can be construed as protected speech under the First Amendment. The district court granted summary judgment in favor of

[*]Honorable William W. Schwarzer, Senior U.S. District Judge for the Northern District of California, sitting by designation.

the defendants on all claims.  For the reasons that follow, we affirm.

## I. BACKGROUND

Plaintiff-appellant, William A. Holbrook, was employed as a detective by the City of Alpharetta Police Department at the time the events giving rise to this action occurred.  In November, 1987, Holbrook sustained injuries following an accident.  As a result of complications arising from the accident coupled with visual problems caused by diabetes, Holbrook experienced retinal detachment in both eyes.  Holbrook subsequently underwent eye surgery that restored partial vision to his left eye;  he remained without visual function in his right eye.  Although Holbrook was unable to work for approximately ten months following the accident, he continued to receive a full salary and benefits from the police department during this period.

Holbrook had worked as a narcotics detective prior to the accident.  After his return to work, Holbrook was unable to drive a car and was assigned detective work that primarily could be handled within the office.  On occasion, Holbrook also accompanied other detectives to crime scenes to conduct investigations and remained "on call" for evening duty.  Holbrook generally required transportation to a crime scene during routine and "on call" duty.  During the period immediately following Holbrook's return to work, the Chief of Police of the Alpharetta Police Department was Larry Abernathy.  In September, 1991, E.L. Waters replaced Abernathy in this capacity and began to modify Holbrook's duties as a detective.  At Waters' direction, Holbrook no longer maintained "on call"

status and was limited to duties that could be performed largely within the office setting. In addition, Sergeant Mulvihill was hired as a supervisor of the detective division and substantially reduced Holbrook's case assignments. Holbrook's job title, wages, and benefits remained the same.

During both Abernathy and Water's respective tenures as police chief, Holbrook applied for promotions to supervisory-level status. Holbrook's initial requests were rejected because there were no openings for supervisor positions. Waters, however, eventually hired Mulvihill as a sergeant in charge of the criminal investigation division in which Holbrook worked. This position had not been posted or advertised.

In December, 1991, Holbrook filed an *ante litem* claim for damages pursuant to O.C.G.A. § 36-33-5 against the City of Alpharetta for discriminatory conduct. On January 30, 1992, Holbrook filed the instant lawsuit in federal court alleging violations of Title II of the Americans with Disabilities Act of 1990 ("ADA"), Section 504 of the Rehabilitation Act, the Georgia Equal Employment for the Handicapped Act, and 42 U.S.C. § 1983. The district court granted summary judgment in favor of the City of Alpharetta and the remaining defendants on all claims excepting Holbrook's cause of action under the Rehabilitation Act. Holbrook subsequently amended his complaint, adding claims brought pursuant to Title I of the ADA along with new section 1983 and state law claims. The district court granted summary judgment in favor of the defendants with respect to all remaining claims.

II. DISCUSSION

We review *de novo* the district court's order granting summary judgment. *See Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1080 (11th Cir.1990). Summary judgment is appropriate where there is no genuine issue of material fact. Fed.R.Civ.P. 56(c). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citation omitted). On a motion for summary judgment, we must review the record, and all its inferences, in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).[1]

A. Title I of the ADA and Section 504 of the Rehabilitation Act

Title I of the ADA provides that no covered employer shall discriminate against "a qualified individual with a disability because of the disability of such individual" in any of the "terms, conditions, [or] privileges of employment." 42 U.S.C. § 12112(a). The ADA imposes upon employers the duty to provide reasonable accommodations for known disabilities unless doing so would result in undue hardship to the employer. 42 U.S.C. § 12112(b)(5)(A); *Morisky v. Broward County,* 80 F.3d 445, 447 (11th Cir.1996). In order to establish a prima facie case of discrimination in

---

[1]Holbrook challenges the district court's order granting summary judgment in favor of the City of Alpharetta on his claims of constructive discharge under both the ADA and the Rehabilitation Act as well as state law claims of negligent supervision and intentional infliction of emotional distress. We find Holbrook's enumerations of error with respect to these causes of action to be without merit and affirm for the reasons stated in the district court's opinion.

violation of the ADA, the plaintiff must prove that (1) he has a disability; (2) he is a qualified individual; and (3) he was subjected to unlawful discrimination because of his disability. *Id.* A "qualified individual with a disability" is an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). [2] The plaintiff retains at all times the burden of persuading the jury that reasonable accommodations were available. *Moses v. American Nonwovens, Inc.,* 97 F.3d 446, 447 (11th Cir.1996). The employer, on the other hand, has the burden of persuasion on whether an accommodation would impose an undue hardship. *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1183 (6th Cir.1996).

Holbrook contends that the City of Alpharetta Police Department discriminated against him on the basis of his disability by continually refusing to assign him the full duties of a police detective and accommodate him as required by the statute. Holbrook further avers that these actions constituted constructive discharge and forced him effectively to terminate his employment with the police department. The City of Alpharetta responds that Holbrook was not a "qualified individual" within the meaning of the ADA because he was unable to perform essential functions of his job

---

[2]The Rehabilitation Act, 29 U.S.C. § 791-796(1), provides, in pertinent part, that "[t]he standards used to determine whether this section has been violated in a complaint alleging [nonaffirmative action] employment discrimination under this section shall be the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12111 et seq.)." 29 U.S.C. § 794(d). Our analysis of Holbrook's claims brought pursuant to Title I of the ADA thus apply with equal force to his claims under the Rehabilitation Act.

with or without reasonable accommodations.

The ADA provides that in determining what functions of a given job are deemed to be essential, "consideration shall be given to the employer's judgment ... and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." 42 U.S.C. § 12111(8). Regulations promulgated under the ADA further identify three factors that can be considered pursuant to an inquiry regarding whether a particular task is an essential part of a job: (1) the reason the position exists is to perform the function; (2) there are a limited number of employees available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function. 29 C.F.R. § 1630.2(n)(2)(i)-(iii).

Holbrook does not dispute that he is unable to perform two functions of a police detective, driving an automobile and collecting certain kinds of evidence at a crime scene. He argues, however, that neither of these functions is essential to his job. He further urges that even assuming we were to find these functions to be essential in nature, he nonetheless can perform the necessary tasks given his employer's reasonable accommodation of his disability.[3] Based on our independent review of the record and

---

[3]Holbrook does not contend that he can drive an automobile under any circumstances, but notes that his employer has accommodated him in the past by allowing another officer to drive Holbrook to locations outside the office when necessary.

deposition testimony, we conclude that Holbrook has not shown that the functions he admittedly cannot perform are non-essential. It is undisputed both that the collection of evidence is part of the job description of a police detective in the City of Alpharetta and that a Georgia driver's license is a requirement for the job. R5-64, Exh. B, Att. 1. It is also undisputed that Holbrook cannot perform independently a full-scale investigation of many types of crime scenes and, unlike any other detective or police officer in the Alpharetta Police Department, must be accompanied by a fellow detective should the need for such an investigation arise. Moreover, Holbrook acknowledges that the collection of evidence is a specialized task requiring training.

Holbrook urges that the types of field work that he cannot perform involve crimes that historically occur rarely in Alpharetta. Although we do not doubt Holbrook's assertions concerning the relatively low crime rate in Alpharetta, nor do we dispute that a police department may be able to predict in general terms what types of evidence will need to be collected at a given crime scene, Holbrook has not shown—and, in our view, cannot show—what types of criminal investigations an Alpharetta police detective may be called upon to investigate in the future nor what evidence it may be necessary to collect at that time. The record indicates that it is not possible to anticipate, in every instance, precisely what evidence will need to be collected and what duties will need to be performed in any given investigation; more importantly, notwithstanding the historical record, we can speculate but not foretell with absolute certainty what crimes may

be committed in the City of Alpharetta in the future. Even assuming that an Alpharetta police detective spends a relatively small amount of time performing the type of field work that Holbrook concedes he cannot undertake, the record establishes—and Holbrook has not proven to the contrary—that the collection of all evidence at the scene of a crime is an essential function of being a police detective in the City of Alpharetta.

Holbrook further urges, however, that even were we to determine that the on-site investigation of a crime scene is an essential part of being a police detective, reasonable accommodations nonetheless could have been made to facilitate his effective performance of all aspects of his job. Holbrook points to the undisputed fact that the police department took measures to accommodate him in the past and that these measures arguably were not unduly burdensome to the department. As previously noted, the ADA defines a qualified individual as one who "*with or without* reasonable accommodation, can perform the essential functions of the employment position ...". 42 U.S.C. § 12111(8) (emphasis added). Holbrook therefore was qualified for the position of police detective with the City of Alpharetta Police Department if he could perform those elements of his job we have found to be essential—and that he concedes he cannot perform unassisted—provided the proposed accommodation to his disability is found to be reasonable. Significantly, what is reasonable for each individual employer is a highly fact-specific inquiry that will vary depending on the circumstances and necessities of each employment situation. Federal regulations promulgated pursuant to

the ADA expressly note that

> [a]n employer or other covered entity may restructure a job by reallocating or redistributing non-essential, marginal job functions ... An employer or other covered entity is not required to reallocate essential functions. The essential functions are by definition those that the individual who holds the job would have to perform, with or without accommodation, in order to be considered qualified for the position.

29 C.F.R. Part 1630, Appendix at 344. *See also Milton v. Scrivner, Inc.,* 53 F.3d 1118, 1124 (10th Cir.1995) ("An employer is not required by the ADA to reallocate job duties in order to change the essential functions of a job."); *Larkins v. CIBA Vision Corp.,* 858 F.Supp. 1572, 1583 (N.D.Ga.1994) ("[R]easonable accommodation does not require an employer to eliminate essential functions of the position.").

Holbrook contends that the department easily could have accommodated him with a "minor shuffling of case assignments" as it had for several years. We agree that the record unambiguously reveals that the police department made certain adjustments to accommodate Holbrook in the past. In addition, viewing the facts in the light most favorable to Holbrook, we acknowledge that the types of criminal investigations that Holbrook cannot perform alone have occurred in the past with relative infrequency. As we have discussed with respect to identifying the essential aspects of being an Alpharetta police detective, however, the police department cannot predict in advance what crimes will be committed in any given week or what evidence will appear at any given crime scene; indeed, being prepared to respond to unexpected events is, in part, precisely what defines a police officer or detective. It is undisputed that if the "unexpected" happened and more than one

rape or murder occurred simultaneously in Alpharetta, or if what appeared to be a burglary turned out also to involve a homicide, this minor "reshuffling" of case assignments proposed by Holbrook necessarily would require the reallocation of an essential part of his job.

Having concluded that the complete investigation of any crime scene—including the collection of evidence—is an essential part of Holbrook's job, we further hold that the City of Alpharetta was not legally required, under the ADA, to accommodate Holbrook's disability with respect to this function.  In this case there appears to be little doubt that, for quite some time and perhaps with relatively minor disruption or inconvenience, the City of Alpharetta was able to accommodate Holbrook with respect to those essential functions he concedes he cannot perform without assistance.  It is equally apparent, however, that the City of Alpharetta's previous accommodation may have exceeded that which the law requires.  We do not seek to discourage other employers from undertaking the kinds of accommodations of a disabled employee as those performed by the City of Alpharetta in Holbrook's case; indeed, it seems likely that the City retained a productive and highly competent employee based partly on its willingness to make such accommodations.  However, we cannot say that the City's decision to cease making those accommodations that pertained to the essential functions of Holbrook's job was violative of the ADA.[4]

_____

[4]It is critical to note that our conclusion is mediated by the facts presented in this case.  Our decision is informed by several specific factors, including the unique nature of police work, the particular realities of a small police department in which each of three detectives is expected to be able to respond

The district court properly granted summary judgment on Holbrook's Title I ADA and Rehabilitation Act claims.

B. Title II of the ADA

In his original complaint, Holbrook set forth allegations of discrimination on the basis of his disability pursuant to Title II of the ADA, applicable to the services, programs, or activities of state and local governments. The district court dismissed the Title II claims after finding that Title II did not become effective until July 26, 1992, several months after the events alleged in the complaint occurred.

Title II of the ADA is entitled "Public Services" and provides, in relevant part:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Federal regulations promulgated pursuant to the ADA state:

> (a) No qualified individual with a disability shall, on the basis of disability, be subjected to discrimination in employment under any service, program, or activity conducted by a public entity.
>
> (b)(1) For purposes of this part, the requirements of title I of the Act, as established by the regulations of the Equal Employment Opportunity Commission ..., apply to employment in any service, program, or activity conducted by a public entity if that public entity is also subject to the jurisdiction of title I.

---

to any situation, and the types of accommodations proposed by Holbrook. We do not imply that an employer invariably is absolved from having to make reasonable accommodations for a disabled employee whenever a given job involves any measure of unpredictability, nor do we suggest that police departments in general cannot be held strictly to the standards set forth in the ADA.

(2) For purposes of this part, the requirements of section 504 of the Rehabilitation Act of 1973, as established by the regulations of the Department of Justice in 28 CFR part 41, as those requirements pertain to employment, apply to employment in any service, program, or activity conducted by a public entity if that public entity is not also subject to the jurisdiction of title I.

28 C.F.R. § 35.140 (1996). The relevant Equal Employment Opportunity Commission (EEOC) guide further states:

The Department of Justice regulations implementing Title II provide that EEOC's Title I regulations will constitute the employment nondiscrimination requirements for those state and local governments covered by Title I (governments with 25 or more employees after July 26, 1992; governments with 15 or more employees after July 26, 1994). If a government is not covered by Title I, *or until it is covered,* the Title II employment nondiscrimination requirements will be those in the Department of Justice coordination regulations applicable to federally assisted programs under Section 504 of the Rehabilitation Act of 1973, which prohibits discrimination on the basis of disability by recipients of federal financial assistance.

EEOC, A Technical Assistance Manual on the Employment Provisions (Title I) of the Americans with Disabilities Act (1992) (emphasis added).

Title II thus incorporates by reference the substantive, detailed regulations prohibiting discrimination against disabled individuals contained in Title I. Title I became effective on July 26, 1992. The above regulations suggest that the provisions of Title II extending the protections afforded to employees in the private sector under Title I to state and local government workers became effective only when Title I went into effect. As explicitly described in the EEOC manual, the Rehabilitation Act provided a remedy for discrimination in public employment prior to the effective date of Title I. We conclude that Title II of the ADA did not become effective until the date on which Title I became

effective, July 26, 1992 and, prior to that date, a plaintiff's remedy for discrimination under Title II of the ADA was the Rehabilitation Act of 1973. Holbrook's Title II claims alleged in his first complaint all involve events occurring before July 26, 1992. The district court correctly determined that Holbrook's Title II claims, therefore, are properly analyzed under the Rehabilitation Act.[5]

C. 42 U.S.C. § 1983

1. First Amendment

Holbrook contends that the discrimination initially inflicted on him by the City of Alpharetta escalated after he filed a state *ante litem* claim under O.C.G.A. § 36-33-5(b) for discrimination, a prerequisite to bringing a legal action against the City. Holbrook submits that the alleged retaliation violated his First Amendment right and, thus, is actionable under 42 U.S.C. § 1983. The district court found that the filing of an *ante litem* claim did not constitute protected First Amendment activity. We agree with the district court's resolution of this issue.

A state may not demote or discharge a public employee in retaliation for protected speech. *Bryson v. City of Waycross*, 888 F.2d 1562, 1565 (11th Cir.1989) (citing *Rankin v. McPherson*, 483 U.S. 378, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)). The question of whether a public employee's speech is constitutionally protected turns upon whether the speech relates to matters of public concern or to matters of merely personal interest to the employee. *Ferrara*

---

[5]Holbrook's Rehabilitation Act claims are discussed in tandem with his Title I ADA claims in the previous section of this opinion.

*v. Mills,* 781 F.2d 1508, 1512 (11th Cir.1986). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers,* 461 U.S. 138, 147-48, 103 S.Ct. 1684, 1690, 75 L.Ed.2d 708 (1983).

Here, the record does not support Holbrook's assertion that his *ante litem* notice alleging discrimination on the basis of his disability was a matter of public concern. The notice solely complains of Holbrook's personal grievance with respect to his alleged treatment by the City of Alpharetta; it does not refer to any practice or course of conduct by the police department against disabled individuals beyond Holbrook and does not seek redress beyond improving Holbrook's personal employment situation. *See* R5-64, Exh. R. Although we recognize that a matter of concern to an individual employee may intersect, at times, with a matter of widespread public interest, "a public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run." *Ferrara,* 781 F.2d at 1516. We conclude that Holbrook's *ante litem* notice against the City of Alpharetta does not constitute speech protected by the First Amendment.[6] The district court did not err in granting summary judgment on this claim.

---

[6]It is important to note that our decision with respect to Holbrook's *ante litem* notice is limited to the facts of this case and does not preclude a legal determination, given a different set of circumstances, that an individual anti-discrimination grievance could also be a matter of public concern giving rise to First Amendment protection. Again, in this case the allegations expressed in the notice pertain solely to Holbrook and do not implicate, in broader terms, the City of Alpharetta's treatment of disabled people, as Holbrook suggests.

2. ADA and Rehabilitation Act

Holbrook also contends that the City of Alpharetta's discriminatory conduct is actionable under section 1983 as a violation of the ADA and the Rehabilitation Act. The City of Alpharetta responds that section 1983 is not available as a remedy to address a violation of the ADA or the Rehabilitation Act because both statutes create comprehensive internal enforcement mechanisms.

No circuit court has had occasion to resolve whether state and local employees who allege a violation of the ADA may bring an action under section 1983 in lieu of or in addition to an action under either of these statutes. As a general proposition, plaintiffs may bring a cause of action pursuant to section 1983 to remedy violations of both the federal constitution and federal statutes. *Maine v. Thiboutot,* 448 U.S. 1, 5, 100 S.Ct. 2502, 2504–05, 65 L.Ed.2d 555 (1980). The Supreme Court has held that a plaintiff alleging a violation of a federal statute will be permitted to sue under section 1983 unless " "(1) the statute does not create enforceable rights, privileges, or immunities within the meaning of § 1983,' or (2) "Congress has foreclosed such enforcement of the statute in the enactment itself.' " *Wilder v. Virginia Hosp. Assoc.,* 496 U.S. 498, 508, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990) (quoting *Wright v. Roanoke Redevelopment and Hous. Auth.,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987)).

District courts in our circuit have reached contrary conclusions with regard to the question of whether section 504 of the Rehabilitation Act creates an enforceable right—or, conversely,

forecloses enforcement—pursuant to section 1983. In *Bodiford v. Alabama,* 854 F.Supp. 886 (M.D.Ala.1994), for instance, the district court held that the defendants had failed to demonstrate that Congress explicitly intended to preclude access to section 1983 for a claim based on the alleged violation of the Rehabilitation Act. The court thus found that a section 1983 "laws" claim could be based on the Rehabilitation Act. *See id.* at 893. In *Veal v. Memorial Hospital,* 894 F.Supp. 448 (M.D.Ga.1995), however, the court arrived at the opposite determination and found that "the remedial scheme created by § 504 of the Rehabilitation Act ... communicates the intention of Congress to preclude § 1983 actions." *Id.* at 454. In reaching this conclusion, the court adopted the reasoning of another district court:

> Section 504 of the Rehabilitation Act and Title I of the ADA contain simple and broad prohibitions of discrimination on the basis of handicap or disability. It is clear that plaintiff's allegations fall within the scope of both § 504 and Title I of the ADA, and that plaintiff's claims under § 1983 are based upon the same alleged injuries as are plaintiff's § 504 and ADA claims. It does not appear that plaintiff's § 1983 claims add anything to plaintiff's substantive rights under either statute, other than possibly circumventing these statutes' administrative procedures and going directly to federal court. In light of the broad remedial scope of § 504 of the Rehabilitation Act and Title I of the ADA [and] their clear applicability to the alleged injuries in this case, ... the court concludes that Congress did not intend to permit § 1983 claims based upon alleged injuries remediable under § 504 of the Rehabilitation Act and Title I of the ADA.

*Id.* at 455 (quoting *Holmes v. City of Chicago,* 1995 WL 270231 (N.D.Ill.1995)).

We find the reasoning advanced by the district courts in both *Veal* and *Holmes* to be persuasive in deciding the issue before us. As noted by those courts, both the Rehabilitation Act and the ADA provide extensive, comprehensive remedial frameworks that address

every aspect of Holbrook's claims under section 1983. To permit a plaintiff to sue both under the substantive statutes that set forth detailed administrative avenues of redress as well as section 1983 would be duplicative at best; in effect, such a holding would provide the plaintiff with two bites at precisely the same apple. We conclude that a plaintiff may not maintain a section 1983 action in lieu of—or in addition to—a Rehabilitation Act or ADA cause of action if the only alleged deprivation is of the employee's rights created by the Rehabilitation Act and the ADA. *See also Johnson v. Ballard,* 644 F.Supp. 333, 337 (N.D.Ga.1986) (where plaintiff brought section 1983 claim for violation of Title VII, court resolved that " "it would be anomalous to hold that when the only unlawful employment practice consists of the violation of a right created by Title VII, the plaintiff can bypass all of the administrative processes of Title VII and go directly into court under § 1983.' ") (quoting *Day v. Wayne County Bd. of Auditors,* 749 F.2d 1199, 1204 (6th Cir.1984)).

## III. CONCLUSION

In this case, Holbrook argues that the City of Alpharetta and all other named defendants discriminated against him on the basis of his disability by reducing his assignments as a police detective, failing to promote him, and constructively discharging him. The district court granted summary judgment in favor of the defendants on all counts of the complaint. We conclude that the district court correctly found at summary judgment that the City of Alpharetta could not reasonably accommodate Holbrook under Title I of the ADA and the Rehabilitation Act. We further conclude that

(1) Holbrook's Title II claims properly must be analyzed under the Rehabilitation Act, (2) Holbrook's state *ante litem* notice did not constitute protected speech under the First Amendment, and (3) Holbrook may not bring a cause of action under 42 U.S.C. § 1983 solely for alleged violations of the ADA and the Rehabilitation Act.  We therefore AFFIRM.