Gregory Q. VAUGHN, Plaintiff,

v.

NATIONSBANK CORPORATION,
Defendant.

No. Civ.A. 1:98CV1877CAP.

United States District Court,
N.D. Georgia,
Atlanta Division.

April 25, 2000.

**ORDER**

PANNELL, District Judge.

The plaintiff filed the instant suit, alleging that the defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101–12117, by terminating his employment with the defendant because of his alleged disabilities. This matter is currently before the court on the defendant's motion for summary judgment.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The plaintiff was hired by the defendant on May 24, 1995, as a Proof Distributor. He was fired on April 22, 1996. His duties included removing checks from delivery bags, bundling them and distributing these bundles to proof operators, who verified the accuracy of the information contained on the checks. Once a Proof Operator finishes his tasks, the Proof Distributors retrieve the checks, place them in a cart and deliver them to a dumbwaiter. Proof Operators depend solely on the Proof Distributors to deliver the bundles of checks. If a Proof Distributor is unexpectedly absent, then the Proof Operators cannot complete their duties.

When the plaintiff was hired, he notified the defendant that he was a diabetic. Shortly thereafter, the plaintiff became aware that he had end stage renal disease. He informed the defendant that due to his kidney problems he would require major surgery—a kidney transplant—which would necessitate his absence from work. The plaintiff took a medical leave of absence beginning on June 28, 1995, and the plaintiff's doctor informed the defendant that the plaintiff would be unable to return to work until September 28, 1995. The plaintiff, however, failed to return to work until four months past his scheduled return date. During his un-authorized absence, the plaintiff refused to provide the defendant with a doctor's excuse for his absence and ignored the defendant's repeated demands for a prospective return date. Despite his unexplained and unexcused absences, the defendant allowed the plaintiff to return to work. Further, when the plaintiff's doctor indicated that the plaintiff required dialysis twice per week, the defendant permitted the plaintiff to work three days per week. Despite these accommodations, the plaintiff continued to

be tardy and absent from work, as well as mislead his supervisors.[1] On March 3, 1996, the plaintiff received a written reprimand which informed him that future failures to report for work would result in termination. Despite this warning, the plaintiff was absent from work an additional five times during the three months prior to his termination.

Throughout his employment, the plaintiff's supervisors, Liz Shaw and Rodney Jackson, repeatedly suggested that the plaintiff resign his position until he had fully recovered. In their depositions Ms. Shaw and Mr. Jackson testified that they encouraged the plaintiff to resign because if he was fired for his absences from work, then, under the defendant's hiring policy, he would be ineligible to be re-hired. Alternatively, if he resigned his position, he would be able to reapply for employment with the defendant. The plaintiff did not resign.

Instead, the plaintiff was scheduled to work on April 17, 1996. However, several hours past the time when he was supposed to begin his shift, the plaintiff called Mr. Jackson and informed him that he had a doctor's excuse from working until April 20, 1996. The plaintiff asserts that he was scheduled to return to work the following Monday, April 22, 1996. The defendant asserts that the plaintiff was supposed to work on Friday, April 19, 1996. Regardless, the plaintiff belatedly arrived for his shift on April 22, and was fired later that afternoon. The plaintiff asserts that he was terminated because he failed to show up on April 19, 1996, even though he was excused from working on that day. Further, the plaintiff contends that the defendant's stated reasons for terminating him were merely a pretext to mask the "real reason," which was the defendant's unwillingness to accommodate the plaintiff's schedule due to his kidney problems. Alternatively, the defendant contends that the plaintiff was fired because of his repeated violations of the defendant's guidelines and procedures.

The defendant has moved for summary judgment on the grounds that the plaintiff: (1) cannot establish a prima facie case of discrimination under the ADA, because, given his chronic absenteeism and tardiness from work, he is not a qualified individual with a disability; (2) cannot show that he was discriminated against due to his disability; (3) was terminated for legitimate, non-discriminatory business reasons; and (4) has failed to introduce any evidence showing the defendant's legitimate and non-discriminatory reasons for terminating him are pretexts for disability discrimination. Alternatively, the plaintiff challenges the defendant's assertion that no genuine issues of material fact exist concerning whether the defendant intentionally discriminated against him based upon his disability. Specifically, the plaintiff asserts that: (1) he is not an unqualified individual merely because of his absenteeism; (2) the defendant terminated him because he failed to show up on a day when he had a legitimate medical excuse for being absent; and (3) the defendant's asserted "legitimate, non-discriminatory business reasons" for terminating the

---

1. The plaintiff's initial authorized leave of absence expired on September 28, 1995, and his doctor informed the defendant that he could return to work. After a four month unauthorized absence the plaintiff informed the defendant that he would report for work but repeatedly failed to do so. During the two months following his "return" to work, the plaintiff was absent without notifying his supervisors and without permission 20 percent of the time. Further, the plaintiff was late for work on 50 percent of the days he showed up for work. This pattern of tardiness and absenteeism consistently contradicted what the plaintiff informed his supervisors he was going to do.

plaintiff were a pretext for disability discrimination.

## II. *LEGAL STANDARD FOR SUMMARY JUDGMENT*

Rule 56(c) of the Federal Rules of Civil Procedure authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." The party seeking summary judgment bears the burden of demonstrating that no dispute as to any material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 156, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *See also Bingham, Ltd. v. United States*, 724 F.2d 921, 924 (11th Cir.1984). The moving party's burden is discharged merely by " 'showing'—that is, pointing out to the District Court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *See Bradbury v. Wainwright*, 718 F.2d 1538, 1543 (11th Cir.1983). Once the moving party has adequately supported its motion, the nonmovant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

In deciding a motion for summary judgment, it is not the court's function to decide genuine issues of material fact but to decide only whether there is such an issue to be tried. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The applicable substantive law will identify those facts that are material. Facts that in good faith are disputed, but which do not resolve or affect the outcome of the case, will not preclude the entry of summary judgment as those facts are not material. *See Anderson*, 477 U.S. at 247, 106 S.Ct. at 2510.

Genuine disputes are those by which the evidence is such that a reasonable jury could return a verdict for the nonmovant. *See id.* In order for factual issues to be "genuine" they must have a real basis in the record. *See Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. When the record as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.' " *Id.* (citations omitted).

## III. *LEGAL STANDARD FOR AN ADA CLAIM*

The general purpose of the ADA is to eradicate discrimination against persons with disabilities and to ensure equal treatment. *See* 29 C.F.R. § 1630.1(a) (1999). In the employment context, the ADA was created to provide "qualified" employees protection from discrimination based on their known or perceived disabilities. *See* 42 U.S.C. § 12112(a). The Eleventh Circuit has explained that the ADA's sole and express purpose is to provide equal, not preferential, opportunities to disabled persons. *See Terrell v. USAir*, 132 F.3d 621, 627 (11th Cir.1998).

All ADA employment discrimination cases require the plaintiff to demonstrate the defendant's discriminatory motive. *See International Broth. of Teamsters v. U.S.*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (employee alleged that her termination of employment was predicated on gender discrimination in violation of Title VII of the Civil Rights

Act of 1964). When establishing the proscribed motive, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Here, the plaintiff must show that the defendant intentionally discriminated against him on the basis of his renal disabilities.

The plaintiff in establishing intentional discrimination may rely on direct or circumstantial evidence. As a threshold question, the court must determine whether the plaintiff's proffered evidence is direct or circumstantial evidence. This distinction can dramatically affect the allocation of evidentiary burdens among the parties. *See Smith v. Horner*, 839 F.2d 1530 (11th Cir.1988). If the plaintiff produces competent evidence of the defendant's discriminatory intent in firing him, then the defendant must prove by a preponderance of the evidence that the same employment decision would have been reached regardless of the discriminatory motive. *See Id.* If, however, the plaintiff's evidence is circumstantial, the defendant's burden on rebuttal is to produce a legitimate, nondiscriminatory reason for the challenged employment decision. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see also Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) (holding that (1) without more, discharging an employee to prevent his pension benefits from vesting did not violate the ADEA, and (2) violation of the ADEA is willful if the employee either knew or showed reckless disregard for whether its conduct was prohibited by the statute). This burden is not of persuasion but merely a minimal burden of production. *See Lee v. Russell County Bd. Of Educ.*, 684 F.2d 769, 773–74 (11th Cir.

1982), aff'd. and explained by, 744 F.2d 768 (11th Cir.1984).

Direct evidence is that which, if believed, proves the existence of a fact in issue without inference or presumption. *See Burrell v. Board of Trustees of the Ga. Military College*, 125 F.3d 1390, 1393–4 (11th Cir.1997). In general direct evidence relates to the actions, statements, or biases of the person making the challenged employment decision. *See Trotter v. Board of Trustees of Univ. of Ala.*, 91 F.3d 1449, 1453–54 (11th Cir.1996). If, however, the evidence presented is, by inference, subject to more than one possible meaning, it is not direct evidence and must be considered circumstantial evidence. *See Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 643 (11th Cir.1998) (citing *Harris v. Shelby County Bd. Of Educ.*, 99 F.3d 1078, 1082–83 n. 2 (11th Cir.1996)).

When discriminatory intent is based on circumstantial evidence, once the plaintiff establishes a prima facie case of discrimination, the defendant must rebut the plaintiff's claims by articulating a legitimate and nondiscriminatory reason for the termination. *See McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. at 1824. Here, if the defendant satisfies this burden of production, then the plaintiff must establish not only that the proffered reason for his termination is false, but also that the "real reason" is discrimination. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–17, 113 S.Ct. 2742, 2751–52, 125 L.Ed.2d 407 (1993). If the plaintiff so persuades the court, then he satisfies his burden of demonstrating by a preponderance of the evidence that he has been the victim of intentional discrimination. *See Carter*, 132 F.3d at 643.

The court has carefully reviewed all the affidavits, depositions, pleadings and

exhibits thereto. By applying the above principles, the court finds that the record reveals no direct evidence of disability-based disparate treatment. While the plaintiff felt that he was pressured to resign, if any such "pressure" was applied, it was not discriminatory in nature. Further, the plaintiff has not demonstrated any specific incidents or comments by the defendant or its employees which were discriminatory. Without any direct evidence, the plaintiff's claims must be analyzed under the burden-shifting framework. *See McDonnell Douglas Corp.,* 411 U.S. at 802, 93 S.Ct. at 1824. Therefore, to succeed on his ADA claim, the plaintiff must preliminarily establish a prima facie case of disability discrimination by the defendant.

■ To establish a prima facie case of employment discrimination based on his alleged disability under the ADA, the plaintiff must demonstrate that he:

(1) has a disability;

(2) is qualified, with or without reasonable accommodation, to perform the essential functions of his job; and

(3) the defendant unlawfully discriminated against him because of his disability.[2]

See *Holbrook v. City of Alpharetta,* 112 F.3d 1522 (11th Cir.1997). The plaintiff must satisfy all of these prima facie elements under the ADA in order to discharge his evidentiary burden.[3]

A. *"Disability" under the ADA*

■ In order to satisfy his first burden, the plaintiff must show that he is disabled and that his disability falls within the definition of "disability" under the ADA:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). *See* 29 C.F.R. § 1630.2(g–h) (1999); *see also Harris v. H & W Contracting Co.,* 102 F.3d 516, 518–20 (11th Cir.1996). The plaintiff cannot merely assert a physical impairment, like end stage renal disease or diabetes, and be covered by the ADA. *See Gordon v. E.L. Hamm & Assoc., Inc.,* 100 F.3d 907, 911 (11th Cir.1996). Instead, the plaintiff must demonstrate that his physical disabil-

---

**2.** This third element is more properly stated as "the defendant took an adverse employment action." *See generally Steelworkers v. Weber,* 443 U.S. 193, 99 S.Ct. 2721, 61 L.Ed.2d 480 (1979); *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978); *Texas Dept. of Community Affairs,* 450 U.S. at 248, 101 S.Ct. at 1089; *McDonnell Douglas Corp.,* 411 U.S. at 792, 93 S.Ct. at 1817. These cases dealt with Title VII claims in which the plaintiff bore the burden of establishing a prima facie case of disparate treatment in an employment discrimination suit, and had to prove that he applied for an available position, but was rejected under circumstances which give rise to an inference of unlawful discrimination. The defendant, if the plaintiff satisfied his prima facie burden, had only to produce evi-

dence of a legitimate and nondiscriminatory reason for the challenged employment discrimination. *See* 42 U.S.C. § 2000e et seq. In *Holbrook* the Eleventh Circuit drew its language from *Morisky v. Broward County,* 80 F.3d 445 (11th Cir.1996), which in turn cited *Tyndall v. National Educ. Centers,* 31 F.3d 209 (4th Cir.1994). *Tyndall,* however, used this language to show what the plaintiff had to prove in order to establish a violation of the statute, not what the plaintiff must prove in order to establish a prima facie case under the ADA.

**3.** In practice if the plaintiff established all of these prima facie elements in an ADA claim, he has not simply shifted his evidentiary burden, but instead demonstrated discrimination.

ities "substantially limit one or more ... [of his] major life activities." *Id.* at 911.

■ In *Bragdon v. Abbott,* 524 U.S. 624, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998), the Court explained that in deciding whether a physical impairment under Section 12102(2)(A) limits one or more of the plaintiff's major life activities the court must first determine whether the plaintiff has an impairment and then determine whether that impairment constitutes a major life activity. *See Bragdon,* 524 U.S. at 624, 118 S.Ct. at 2196. These inquiries under the ADA are questions of law for the court. *See id.* Although the ADA does not define "impairment," courts can utilize the Equal Employment Opportunity Commission ("EEOC") regulations issued to implement Title I of the ADA, which provides that a physical impairment can be "any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal ... digestive, genitourinary, hemic and lymphatic, skin and endocrine ...." 29 C.F.R. § 1630.2(h)(1) (1999). This list is not exhaustive and merely indicates some disablements that fall within the meaning of impairment under the ADA. Here, whether the plaintiff's "impairment" is his diabetes, end stage renal disease, or weekly dialysis, the court finds that the plaintiff has sufficiently demonstrated he has an impairment.

■ Next, the court must identify which life activity upon which the plaintiff relies, and determine whether that activity "substantially limit[s]" his "major life activity" under Section 2102(2)(A). *See also* 29 ˙C.F.R. § 1630.2(i–j) (1999). Again, while the ADA does not define "major life activities," under the EEOC's implementation regulations, "major life activities" are those "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and

working." 29 C.F.R. § 1630.2(i) (1999). If the asserted impairment is not contained in the EEOC's enumerated archetypes of "major life activities," the court must analyze the significance of the particular activity within the meaning of the ADA. *Gordon,* 100 F.3d at 911. In analyzing whether a disability qualifies as a substantial limitation of a major life activity, the court must consider:

(1) the nature and severity of the impairment;

(2) the duration or expected duration of the impairment; and

(3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2)(i–iii) (1999).

The plaintiff's alleged disabilities could be his chronic renal disease or diabetes. Either condition clearly has a substantial limitation on his mobility and renal function which greatly impairs his ability to perform his job at least two days per week. *See generally* 29 C.F.R. §§ 1630–1630.3; *Gordon,* 100 F.3d at 910–13. While the court is not required to find a nexus between the plaintiff's alleged major life activity impairment and his workplace duties, the court finds that such a nexus exists. *See Bragdon,* 524 U.S. at 624, 118 S.Ct. at 2196. Accordingly, the court finds that the plaintiff has a disability within the meaning of the ADA and has satisfied the first element of his prima facie case of employment discrimination.

## B. *"Qualified" Under the ADA*

■ In order to satisfy his second burden, the plaintiff must show that he is a "qualified individual with a disability" who "with or without reasonable accommodation, can perform the essential functions of his [the] employment position." 42 U.S.C. § 12111(8). In analyzing "qualified" under

the ADA, the court must focus on whether the plaintiff can ably perform his job. *See* 29 C.F.R. § 1630.2(m–n) (1999); *Harris,* 102 F.3d at 523. It is apparent from the record that the plaintiff was performing his job adequately when he showed up for work. The question before the court, however, is whether the plaintiff's excessive absenteeism and tardiness disqualifies him as able to perform his job under the ADA.

 In order to determine whether the plaintiff is qualified for his job, the court must first determine whether he could perform its essential functions and, if not, whether a reasonable accommodation could be made so that he could perform those functions. *See* 29 C.F.R. § 1630.2(n) (1999); *Holbrook,* 112 F.3d at 1526 (citing 42 U.S.C. § 12111(8)). The ADA requires that, in determining what job functions are essential, "consideration shall be given to the employer's judgment . . . and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Holbrook,* 112 F.3d at 1526 (quoting 42 U.S.C. § 12111(8)). Further, the ADA advises the court in making its essentialness inquiry to consider: "(1) the reason the position exists is to perform the function; (2) there are a limited number of employees available among whom the performance of the job function can be distributed; and (3) the function is highly specialized so that the incumbent in the position was hired for his or her expertise or ability to perform the particular function." *Holbrook,* 112 F.3d at 1526 (citing 29 C.F.R. § 1630.2(n)(2)(i)–(iii) (1996)).

Here, the defendant contends that the plaintiff cannot satisfy the essential functions of his job because he fails to show up for work. The defendant does not dispute that the plaintiff performs his job adequately when he is at work, but rather argues that his excessive absences prevent him from performing those functions. Simply, the defendant contends that the plaintiff's presence is an essential element of his job that he failed to satisfy. *See Jackson v. Veterans Admin.,* 22 F.3d 277, 278 (11th Cir.1994). Conversely, the plaintiff argues that his attendance is not an essential element of his job and that he was "able to perform all the functions described in his job description . . . and was accommodated when he was unable to be there." Pl.'s Mem. Of Law In Support of Pl.'s Opposition to Def.'s motion for Summary Judgment. This argument is without merit.

An essential function "means the fundamental job duties of the employment position." 29 C.F.R. § 1630.2(n)(1) (1999). The plaintiff's position required him to deliver checks to the Proof Operators in a timely fashion in order that they might proceed with their tasks. This type of work cannot be completed "off site or deferred until a later day." *Jackson,* 22 F.3d at 279. The defendant's requirement that the plaintiff report for work is an essential element of the plaintiff's job description. *See Willis v. Conopco, Inc.,* 108 F.3d 282, 287 (11th Cir.1997). Because the plaintiff's attendance was sporadic and unpredictable, he could not fulfill an essential element of his job, presence. *See Jackson,* 22 F.3d at 279. Accordingly, the plaintiff has failed to demonstrate that he is "otherwise qualified" under the ADA.

 The court must, however, also address the plaintiff's proposition that he could have satisfied his presence requirement if only the defendant had accommodated his needs. *See* 42 U.S.C. § 12111(9). The ADA does not require employers to reallocate or eliminate essential job functions in order to accommodate an employee. *See* 29 C.F.R. § 1630.2(o) (1999). The plaintiff bears the burden of producing evidence sufficient to make a facial show-

ing that a reasonable accommodation was possible. Then, the burden shifts to the defendant to demonstrate its inability to make such an accommodation. *See White v. York International Corp.,* 45 F.3d 357 (10th Cir.1995). The plaintiff points out that the defendant reduced the plaintiff's work week to three days as evidence of the defendant's ability to accommodate him. The court agrees that the defendant could accommodate his needs to the extent that his dialysis treatments require a reduced work week. *See* 42 U.S.C. § 12111(9)(B). Certainly, absences in excess of the plaintiff's permitted medical leave could be accommodated; in fact they were. While the defendant made those accommodations, it has shown that it could not reduce the plaintiff's work week to a complete vacuity. Further, the court cannot find any reasonable accommodation that would permit the plaintiff to show up for work in his sporadic and unpredictable manner. Accordingly, the court finds that, under the ADA, the defendant is not required to accommodate the plaintiff's lack of presence in the workplace. The plaintiff, therefore, has failed to produce evidence sufficient to make out a prima facie case of discriminatory discharge under the ADA.

The plaintiff's alternative assertion that he was terminated because he failed to report to work solely because of his absence on the one day he was arguably medically excused contradicts the record. The record clearly demonstrates that the plaintiff was fired for a combination of reasons including his four month unexcused absence and his continued absences once he "returned" to work. Similarly, the plaintiff's final alternative argument that the defendant's asserted reason for terminating his is a pretext for disability discrimination is without merit. This is the ultimate finding. The defendant did everything it could to help the plaintiff retain his position. While the court is sensitive to the seriousness of the plaintiff's illness-

es, the ADA was not created to give disabled persons more rights than any other employee, but rather to ensure that all employees, regardless of their disabilities, are treated equally.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS the defendant's motion for summary judgment [Doc. No. 18–1].