**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 25-11476

Non-Argument Calendar

————————————————

DIANA Y. LUGO,

*Plaintiff-Appellant,*

*versus*

BIRMINGHAM-JEFFERSON COUNTY TRANSIT
AUTHORITY,

*Defendant-Appellee.*

————————————————

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 2:22-cv-00362-ACA

————————————————

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Diana Lugo appeals the district court's order granting her employer's motion for summary judgment on her discrimination and retaliation claims. We affirm.

**I.**

Between 2019 and 2021, Diana Lugo worked as a customer service representative in the paratransit group of the Birmingham-Jefferson County Transit Authority—the public transit operator for Birmingham, Alabama. In that role, she scheduled rides so that customers with disabilities could get to and from their medical appointments and other places on time.

Lugo's performance was shaky at the start. In October 2019, she was written up after she failed to schedule a ride, forcing a customer to miss a physical therapy appointment. Lugo's supervisor admonished her to "confirm her trip times with her customers at the close of each call." But the admonishment was apparently not enough. A few days later, Lugo scheduled a customer's requested 4:00 pm ride for 4:00 am, and another customer's requested 12:00 pm ride for 10:00 am. She was again let off with warnings.

Many months went by without another mishap. Lugo's performance reviews from 2020 reflect "good" ratings from her supervisor, but not without reminders to be "less defensive" and "more receptive to correction." In August 2020, Lugo applied for an open leadership position in her group. But she was passed over for Alicia Pebbles—a more senior employee.

Things went downhill from there.  In February 2021, Lugo was instructed to return to the office "until further notice" due to connectivity problems with remote work.  A month later, Lugo was written up for abruptly hanging up on a customer who had complained that it was "difficult for him to understand" what she had been saying.  Lugo was then put on a performance improvement plan, tailored to boost her "customer service skills" and "ability to follow directives and take responsibility for error[s]/mistakes."  Under the plan, failure to meet these and other goals could lead to "further disciplinary actions including suspension and or termination."

Six weeks in, Lugo had failed to "meet expectations" on almost all of her goals.  Her evaluation recounts incidents in which she "blamed the customer for being rude" and disobeyed orders from more senior employees.  As her supervisor put it:  Lugo's "biggest deficiency is her inability to take ownership of her mistakes or errors" and her tendency "to do things her way instead of adhering to the instructions given to her by her supervisor."  She was fired shortly after this poor review.

Proceeding pro se, Lugo filed this lawsuit, alleging race and national origin discrimination under Title VII and § 1981, as well as retaliation under Title VII, § 1981, the Americans with Disabilities Act, and the Rehabilitation Act.  She claims that she was terminated not because of her poor performance, but because she is Hispanic and a native of Colombia.  Additionally, Lugo claims that she faced

retaliation "for being a tireless advocate for the rights of disabled customers."

After lengthy discovery, the district court granted the employer's motion for summary judgment. On Lugo's disparate treatment claims, the court concluded that the record lacked sufficient evidence to allow a reasonable jury to infer that Lugo's race or national origin was the but-for cause of any adverse action. On her retaliation claims, the court concluded that she failed to present sufficient evidence of any protected activity or retaliatory motive. After the court denied her motion for reconsideration, Lugo appealed.

## II.

We review the district court's grant of summary judgment de novo. *See McCreight v. AuburnBank*, 117 F.4th 1322, 1329 (11th Cir. 2024). A movant is entitled to summary judgment if he can show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

The denial of a motion for reconsideration ordinarily does not entail a separate analysis: "we review the original disposition itself under whatever standard of review we would normally use." *ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 113 F.4th 1312, 1318 (11th Cir. 2024).

### III.

While Lugo seeks relief under a bevy of different statutes, this case involves two sets of claims: disparate treatment and retaliation. We will address each in turn.

Before we do, however, we pause to note that Lugo's submissions to this Court fall short. While we do not expect pro se litigants to possess "the knowledge of a lawyer," they must still present an intelligible explanation as to why they should prevail. *Gunn v. Newsome*, 881 F.2d 949, 962 (11th Cir. 1989); *see also Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002); Fed. R. App. P. 28(a)(8)(A). Lugo's opening brief is fifty pages long and her reply brief is thirty—well in excess of what the Rules allow. *See* Fed. R. App. P. 32(a)(7)(A). But neither makes her arguments clear or provides much in the way of citations, whether to case law or the record. But giving Lugo the absolute benefit of the doubt, we will proceed to the merits of her appeal.

### A.

Title VII bars discrimination "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 1981 likewise prohibits "intentional race discrimination" in the context of employment contracts. *Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022) (quotation omitted); *see* 42 U.S.C. § 1981. Claims under § 1981 involve the "same analytical framework" as those under Title VII. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009).

In employment discrimination cases, a wide variety of circumstantial evidence may be used to defeat a motion for summary judgment—whatever "would allow a jury to infer intentional discrimination by the decisionmaker." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 946 (11th Cir. 2023) (quotation omitted). For instance, a plaintiff may point to "suspicious timing," "ambiguous statements," "systematically better treatment of similarly situated employees," or evidence that "the employer's justification is pretextual." *Ismael v. Roundtree*, 161 F.4th 752, 760 (11th Cir. 2025) (quotation omitted).

As best as we can tell, Lugo appears to contend that her coworkers of other races received more favorable treatment. For this kind of comparator evidence to support an inference of discriminatory intent, the comparators must be "similarly situated in all material respects." *Lewis v. City of Union City*, 918 F.3d 1213, 1224–25 (11th Cir. 2019) (en banc). As relevant here, a similarly situated comparator "will share the plaintiff's employment or disciplinary history." *Id.* at 1228. Lugo complains that Alicia Pebbles—a black woman—was picked for the leadership position that Lugo was eyeing. But as Lugo concedes, Pebbles had worked at the Birmingham-Jefferson County Transit Authority for a longer period of time than she had. An "employer is well within its rights to accord different treatment to employees who are differently

situated in material respects," including those "who have different work histories." *Id.* (internal quotation marks omitted).[1]

Turning to her termination, Lugo asserts that her employer's disciplinary justification is pretext for discrimination. To show pretext, she must demonstrate that her employer's explanation is mired with so many "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" that "a reasonable factfinder could find them unworthy of credence." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (en banc) (quotation omitted). Not only does the employer's proffered reason have to be false, discrimination must be "the real reason for the adverse action." *Ismael*, 161 F.4th at 761 (quotation omitted).

In the months leading up to her termination, Lugo was reprimanded—several times—for various work-related issues: underperforming while working remotely, abruptly hanging up on difficult customers, disobeying orders, and failing "to take ownership of her mistakes." And when Lugo did not address these problems as part of her performance improvement plan, she was fired. Lugo contends that this decision reflects a rush to judgment. In her view, her supervisor "didn't let [her] talk after accusing [her]

---

[1] Lugo also contends that the employer turned a blind eye to Pebbles's internet issues. But Pebbles hardly received more favorable treatment. Like Lugo, Pebbles was written up for the "logins and logouts" documented by the system and then ordered to return to the office "until further notice." But unlike Lugo, who "was argumentative and denied the data," Pebbles "accepted the data and results" of the IT audit.

of insubordination," denying her "the right to speak" and the "opportunity to explain." Whether her supervisor acted too hastily is not for us to referee. *See Gogel*, 967 F.3d at 1148. Title VII does not empower federal courts to operate as a "super-personnel department assessing the prudence of routine employment decisions, no matter how medieval, high-handed, or mistaken." *Flowers v. Troup Cnty., Ga., Sch. Dist.*, 803 F.3d 1327, 1338 (11th Cir. 2015) (quotation omitted). Lugo does not point to any evidence "that would call into question the genuineness" of her employer's disciplinary rationale or suggest that her race or national origin had anything to do with her termination.[2] *Gogel*, 967 F.3d at 1150. As a result, no reasonable jury could infer that the employer's justifications were pretext for discrimination.

In short, Lugo has not presented "enough evidence for a reasonable jury to conclude that illegal discrimination occurred." *McCreight*, 117 F.4th at 1326. The district court did not err by granting her employer's motion for summary judgment as to Lugo's disparate treatment claims.

---

[2] Lugo contends that her employer committed fraud on the court by submitting forged disciplinary documents. But she does not offer any evidence to support this bold assertion. In fact, Lugo relies on the very documents that she claims to be fabricated, including her employer's assessment that her "call center service level" had improved as a result of the performance improvement plan. As Lugo would have it, we must accept the positive aspects of her disciplinary record as genuine and disregard the negative aspects as phony. We reject this self-serving approach.

**B.**

Both Title VII and the Americans with Disabilities Act proscribe retaliation against an individual who has "opposed" any practice made unlawful by those statutes. *See* 42 U.S.C. §§ 2000e-3(a), 12203(a). To make out a successful retaliation claim under either statute, the plaintiff must show that (1) she "engaged in statutorily protected expression," (2) she "suffered an adverse employment action," and (3) "there is a causal connection between the two events." *Shannon v. Bellsouth Telecomms., Inc.*, 292 F.3d 712, 715 (11th Cir. 2002) (alterations adopted and quotation omitted); *Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018).

We start with Title VII. Lugo does not point to any evidence indicating that she opposed any race- or national origin-based discrimination against her or anyone else. One exhibit contains a grainy photograph of a computer screen, apparently depicting an email from Lugo's supervisor informing her that she could raise her "concerns of being discriminated against or 'picked on'" to a workplace counselor. Even assuming that this unauthenticated exhibit would be admissible at trial, it says nothing at all about race or national origin, and does not indicate that Lugo ever brought up that she believed she had faced discrimination on those grounds. *See Coutu v. Martin Cnty. Bd. of Cnty. Comm'rs*, 47 F.3d 1068, 1074 (11th Cir. 1995). A generalized complaint about "[u]nfair treatment, absent discrimination based on race, sex, or national origin, is *not* an unlawful employment practice under Title VII." *Id.*

In any event, the temporal proximity between the allegedly protected activity and the allegedly retaliatory acts is too remote to support causation. Lugo complained that she was "being discriminated against or 'picked on'" in September 2019—almost a year before she was passed over for a promotion and two years before her termination. "A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough" to show retaliatory motive. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). The disparities in this case do not come close. Moreover, any inference of retaliatory motive is especially implausible given the fact that Lugo received positive performance reviews from her supervisor throughout 2020. No reasonable jury could find that the employer sought to retaliate against Lugo for her September 2019 complaint.

Lugo's ADA claims fare no better. Lugo asserts that she was punished because she advocated for the "rights of disabled customers." For support, she relies on an internal document—again from September 2019—explaining that on an unspecified day, she said that she "wanted to take it upon herself to call passengers to notify them that the operator was running extremely late and give the passengers the option to wait or see if they can find another way home." In response, Lugo's supervisor admonished her not to "call passengers to give them this option unless told by a supervisor or a team lead." Setting aside lingering uncertainties as to what Lugo actually did and whether that conduct would be protected under the ADA, the temporal proximity between Lugo's September 2019 conduct and the challenged employment actions

is not proximate at all.   Again, the earliest of the allegedly retaliatory actions occurred almost a year later.  And because Lugo has offered nothing else to support an inference of retaliatory motive, no reasonable jury could find in her favor on her ADA claims.[3]

★        ★        ★

Given the lack of evidence indicating that the employer harbored any discriminatory or retaliatory intent, we **AFFIRM** the district court's summary judgment order.

---

[3] Our analysis "applies with equal force" to Lugo's retaliation claims under § 1981 and the Rehabilitation Act.  *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1526 n.2 (11th Cir. 1997); *see Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008).